The COUNTY OF OAKLAND, by George W. KUHN, the Oakland County Drain Commissioner, Alice L. Schoenholtz, David Snyder, and All Other Persons Similarly Situated Who Are End Users of the Detroit Sewage System, Plaintiffs,

v.

**VISTA DISPOSAL, INC., Defendant,**

and

**The United States of America, Auxiliary Defendant.**

**Civil Action No. 86–74656.**

United States District Court, E.D. Michigan, Southern Division.

Feb. 29, 1996.

Robert P. Hurlbert, Dickinson, Wright, Moon, Vandusen & Freeman, Bloomfield Hills, for Alice Schoenholtz.

Patrice L. Baker, Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, Detroit, MI, for Henry Ford Hosp.

### *ORDER GRANTING MOTION FOR RECONSIDERATION AND AMENDING JUDGMENT*

GADOLA, District Judge.

Plaintiff Oakland County brought this action alleging that it lost millions of dollars as a result of a RICO conspiracy engaged in by Vista Disposal, Inc. ("Vista") and other indi-

viduals and business entities. Oakland County settled its claims against many of the conspirators and was granted a default judgment against Vista in the present action.

After entry of the default judgment, Oakland County named the United States as an auxiliary defendant, seeking to recover the funds which the United States collected from Vista and the conspirators pursuant to forfeiture orders. At a bench trial, Oakland County successfully argued that the United States is holding that money for Oakland County in a constructive trust. The United States, however, did not recover all of Vista's ill-gotten gains. Some of the money had dissipated. Accordingly, in theory, the constructive trust held by the United States is not large enough to fully compensate each potential beneficiary of that trust.

At issue in the present motion is the amount of money which the United States must pay to Oakland County. In this court's conclusions of law, filed on September 27, 1995, Oakland was awarded $546,363.91, substantially less than its total damages of $828,505.00. This lesser amount was Oakland's pro rata share of the funds currently held in constructive trust by the United States. Oakland files the present motion for reconsideration, requesting this court to award Oakland the complete amount of its damages. Oakland argues that it would be entitled to a pro rata share of the trust res only if the other beneficiaries of the trust had pursued their legal claims against the United States. Since the other potential beneficiaries did not pursue their claims, and are now precluded from doing so by the statute of limitations, Oakland believes that it should receive all of its damages. Otherwise, Oakland asserts, the United States will receive a windfall. Not surprisingly, the United States believes that Oakland should only receive its pro rata share of the trust res. For the following reasons, this court will grant the plaintiff's motion and will amend its judgment accordingly.

## I. Analysis

Fed.R.Civ.P. 59(e) permits a party to file a motion to alter or amend a judgment within ten days of entry of the judgment. In the present case, judgment was entered on September 27, 1995 and this motion was filed nine days later, on October 6, 1995. Thus, this motion is timely.

■ Defendant argues that this court should not consider the merits of this motion because it does not raise any new issues. Defendant relies on Local Rule 7.1(h)(3):

Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

While this court would be well within its discretion not to reach the merits of this motion, the motion does point out what this court considers to be an error in its September 27, 1995 conclusions of law. Further, correction of this error will change the judgment in this case. Accordingly, this court will exercise its discretion to decide the merits of plaintiff's motion.

This court's holding that Oakland was entitled only to a pro rata share of the trust res was based on the general principle stated in Restatement, *Restitution,* § 213(1):

(1) ... [W]here a person wrongfully mingles money of two or more persons, each of them is entitled to share in the mingled fund ... in such proportion as his money bore to the whole amount of the fund.

■ This proposition is correct, as a general principle, but assumes that each of the claimants are entitled to recover from the trust. In such a case, it is equitable that each claimant recover only their pro rata share. Under the ratable distribution system, equally positioned claimants are treated equally. When this court ordered that Oakland recover only its pro rata share of the trust res, it was doing so in order to protect other potential claimants of the trust res. This was in error. As correctly noted by the plaintiff, there no longer are any other potential claimants in the present case. No other

claimants have brought suit for their funds. The statute of limitations has since run. Thus, the other claimants have sat on their legal rights. Since the other claimants are now incapable of asserting their rights, the rationale for allowing Oakland to recover only its pro rata share is not present. The result of the court's earlier ruling is to give the United States a windfall.

The cases cited by the United States do not weaken the plaintiff's argument. They deal with situations in which there is more than one claimant capable of asserting a claim. *Goldberg v. New Jersey Lawyers' Fund,* 932 F.2d 273 (3rd Cir.1991), states that "in general, courts favor a pro rata distribution of funds *when such funds are claimed by creditors of like status.*" *Id.* at 280. As previously, noted, there are no other creditors of like status to Oakland. *Commodity Futures Trading Comm'n v. Franklin,* 652 F.Supp. 163 (W.D.Va.1986), *rev'd on other grounds,* 875 F.2d 76 (4th Cir.1989), states that "[c]onstructive trusts are equitable remedies designed to prevent unjust enrichment." *Id.* at 168. In the present case, the United States will receive unjust enrichment of over $500,000.00 if Oakland does not recover all of its damages. Further, in *Franklin,* the court held that *"because all . . . investors may claim a constructive trust over their . . . funds,* equity dictates that distribution be applied even-handedly if possible." *Id.* In the present case, no other entities may assert a claim over the funds being held by the United States.

Lastly, this court is influenced by the following language from the Supreme Court:

> The creditor . . . whose legal diligence has pursued the property into this court, is entitled to a preference as the reward of his vigilance; and it would seem unjust that the creditor who has sustained all the risk and expense of bringing his suit to a successful termination should in the end be obliged to divide the avails thereof with those who have slept upon their rights. . . . Though it be the favorite policy of this court to distribute assets equally among creditors, *pari passu,* yet, whenever a judicial preference has been established by the superior legal diligence of any creditor,

that preference is always preserved in the distribution of assets by this court.

*Comm'rs Freedman's Savings & Trust Co. v. Earle,* 110 U.S. 710, 716–17, 4 S.Ct. 226, 229–30, 28 L.Ed. 301 (1884) (citations omitted). Oakland, through its diligence and the lack of diligence of others, is the only entity entitled to assert a claim to the trust funds at issue. Accordingly, equity demands that Oakland recover all of its damages.

### ORDER

Therefore, it is hereby **ORDERED** that plaintiff's motion for reconsideration be **GRANTED.**

It is hereby further **ORDERED** that judgment be entered in favor of Oakland County in the amount of $828,505.00 plus $868,552.92, the benefit the United States has derived from holding this money through February 29, 1996. An amended judgment will be so entered.

**SO ORDERED.**

### AMENDED JUDGMENT

This action came before the court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly reviewed and a decision having been duly rendered,

It is hereby **ORDERED** and **ADJUDGED** that the United States pay to Oakland County $828,505.00 plus $868,552.92, which is the benefit the United States has derived from holding $828,505.00 for Oakland County through February 29, 1996.

It is hereby further **ORDERED** and **ADJUDGED** that the United States pay to Oakland County an additional $248.12 for each day past February 29, 1996 that it holds Oakland's money.

It is further **ORDERED** that the clerk serve a copy of this judgment by United States mail on the counsel for plaintiff and on counsel for defendant.